UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

TROY TOD TROSTLE,

                    Petitioner,                     Case No. 1:07-cv-218

v.                                           Honorable Janet T. Neff

STATE OF MICHIGAN et al.,

                    Respondents.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. A Kent County jury convicted Petitioner of operating a motor vehicle under the influence of liquor, third offense, MICH. COMP. LAWS § 257.625(1). On January 22, 2004, Petitioner was sentenced as a fourth felony offender to a prison term of three years and ten months to fifteen years. He was released on parole on December 23, 2008. In his *pro se* petition, Petitioner raises seven grounds for relief, as follows:

I.        The stop was unconstitutional under the Fourth Amendment in that it was not supported by probable cause, and the arrest of Defendant Trostle was unconstitutional and statutorily illegal in that offense, a misdemeanor, did not occur in the presence of arresting officer(s).

II.       Defendant Mr. Trostle was under arrest and in custody, when any statements were made for the Fifth Amendment to be applied.

III.     The search warrant for Mr. Trostle's blood was not issued on a showing of probable cause and the underlying affidavit was not supported by facts but solely unsupported conclusions of the affiant, who knowingly or with a reckless disregard for the truth, submitted it.

IV.     Defense Counsel, R. Craig Avery, was ineffective in the representation of his client under the Sixth Amendment. Avery did not conduct a prompt investigation of the circumstances of the case, did not explore all avenues leading to the facts of the case, and did not present a defense.

V.      The evidence was insufficient to prove that Defendant Trostle was operating a vehicle under the influence of alcohol and, thus the Defendant's conviction for OUIL constitutes a denial of due process.

VI.     Mr. Trostle was denied a fair trial, where the prosecution failed to exercise due diligence to produce an endorsed regestae [sic] witness, and where the trial court failed to submit a missing witness instruction to the jury.

VII.    Mr. Trostle was denied a fair trial where the prosecution improperly argued in rebuttal that a witness told a testifying officer that he saw only one person exit the vehicle following the crash, even though the "witness" never testified at trial and the "fact" was not in evidence.

(Am. Pet., 9-17, docket #5.)  Respondent has filed an answer to the petition (docket #13) stating that the grounds should be denied because they were either procedurally defaulted or had no merit.  Upon review and applying the AEDPA standards, I find that Petitioner's grounds are all without merit. Accordingly, I recommend that the petition be denied.

**Procedural History**

**A.      Trial Court Proceedings**

The state prosecution arose from an accident that occurred at 1:30 a.m. on September 23, 2002, in which Petitioner allegedly overturned a Ford LTD while intoxicated.  Petitioner was charged with one count of third-offense operating under the influence of liquor.  He waived his preliminary examination and was bound over to the Kent County Circuit Court on February 28, 2003.  A supplemental information was filed charging Petitioner as a fourth habitual offender.

Petitioner was tried before a jury beginning November 19, 2003, and concluding on November 20, 2003.[1]

Grand Rapids Police Officer Nicholas Calati testified that he was called to an accident at the intersection of Burton Street and the US 131 expressway at 1:22 a.m. on September 23, 2003. At that time, construction was underway on the Burton Street overpass of US 131, and the lanes were blocked. A 1985 Ford LTD apparently had approached the bridge from the east and failed to make the turn onto the on-ramp of northbound US 131, located just before the blockade. The car hit the curb, hit the guard rail, went on its side and slid, coming to a stop with over a third of the car hanging over the expressway. Fearing that the car could fall onto the highway, the responding officers closed the eastern-most lane of the expressway. (Tr. II, 15-16.) When the officers arrived at the scene, they looked first to see if the driver was pinned in the car and then looked for the driver in the adjacent area. (Tr. II, 17.) They could not locate anyone, so they coordinated the closing of the highway lane, called a tow truck and ran the vehicle's license plate. Calati testified that, because the exhaust pipe was still warm and because a fluid drip had not created a large puddle, he believed that the accident had happened only about five minutes before he arrived. (Tr. II, 34-35.) About ten minutes after they arrived, one of the other officers saw an individual run across US 131. Calati did not see the individual until other officers brought him back to the scene, when he was placed in Calati's cruiser. (Tr. II, 18-19.) The man smelled strongly of intoxicants, was belligerent, and had slurred speech. (Tr. II, 19.) He had a cut on his forehead and was bleeding. (Tr. II, 21.) The man gave his name, which was the same last name as the owner of the car. The man identified the car's owner as his mother, with whom he lived. (Tr. II, 21.) Calati identified

---

[1]The transcripts for November 19 and November 20, 2002 are respectively marked as Volumes I and II of the trial transcript.

Petitioner as the man taken into custody at the scene. (Tr. II, 22.) Calati asked Petitioner about the accident. Petitioner, yelling and swearing, denied driving the vehicle. Petitioner identified the driver as a person named José, who had an unknown hispanic surname. According to Petitioner, he had been at José's house, and José was driving him home when the accident occurred. Petitioner could provide no last name and no address for José. Based on the information they had, Petitioner was arrested, and Calati transported him to the jail. (Tr. II, 23-24.) Petitioner asked why he was being taken to the jail. When Calati explained the reasons, Petitioner stated that he "should have hid in the bushes longer." (Tr. II, 24.)

Petitioner refused to take a breath test at the jail, so the officers prepared a warrant to obtain a blood draw. (Tr. II, 25.) The warrant was signed by the district judge and presented to the nurse, who drew Petitioner's blood. (Tr. II, 26.) At the time of his arrest, Petitioner had keys in his possession, which Calati confiscated for purposes of comparing them with the car at a later date; such a comparison would not have been safe at the scene of the accident. (Tr. II, 29.) Subsequently, in an apparent oversight, no one compared the keys to the accident vehicle. (Tr. II, 29.)

On cross-examination, Calati was asked if the name "Eddie Rodriguez" sounded like the name of the individual Petitioner said was driving. Calati stated that he did not remember, but that the surname was hispanic. (Tr. II, 31.) On redirect, Calati stated that the name could have been any name that was Spanish-sounding to him. (Tr. II, 32.) Calati stated that if he had gotten both the first and last names at the time, he would have included them in his report. (Tr. II, 32.)

Grand Rapids Police Officer Lance Taylor testified that he arrived at the scene at approximately 1:20 a.m. (Tr. II, 40.) Sergeant Vinny Reilly and Officer Calati were both already

there. When he arrived, Taylor prepared to block northbound US 131 traffic, due to the danger presented by the teetering car on the overpass. (Tr. II, 40.) As he was getting ready to get on the highway, he saw a man run across the northbound lane of US 131, heading east and away from the vehicle. (Tr. II, 41.) Taylor drove down the entrance ramp, activated his lights, and attempted to stop the individual. (Tr. II, 42.) He yelled, "Stop, police," repeatedly. (Tr. II, 43.) The individual jumped the fence separating the US 131 right-of-way from the railroad tracks and continued to run east and north. (Tr. II, 43.) The man turned around and saw Taylor and the police cruiser, then he continued to run through the train tracks and train yard. Taylor chased him on foot, and the man continued for another 100 yards before saying, "I give up." (Tr. II, 44.) Taylor ordered the man to his hands and knees and then handcuffed him. (Tr. II, 44.) The man, Petitioner, smelled heavily of alcohol and had slurred speech and was stumbling while he was escorted to a police vehicle. (Tr. II, 45.)

Grand Rapids Police Officer Andrew Snyder testified that he was dispatched to the accident and arrived at approximately 1:22 a.m. When he arrived, Sergeant Reilly, Officer Calati and Officer Taylor already were present. (Tr. II, 50-51.) Because it was a heavily traveled roadway and no one had gathered at the scene, Snyder and other officers concluded that the accident had happened within the preceding five or ten minutes. (Tr. II, 52.) Snyder identified the keys taken from Petitioner after his arrest, which included a Ford vehicle key. (Tr. II, 53-54.) On cross-examination, Snyder acknowledged that he did not know what vehicle the key fit. (Tr. II, 57.)

Sergeant Vincent Reilly testified that he was on patrol on September 23, 2003, when he came across the accident. He called dispatch to report that he needed additional officers to assist because he had located a vehicle that was dangling over the edge of the retaining wall above the

highway. (Tr. II, 59.) Reilly saw no people near the scene and concluded that the accident had happened recently. (Tr. II, 60.) The accident was unusual because of the car's precarious position over the highway. Reilly expected the car would have called the attention of anyone who saw it. (Tr. II, 60.) Reilly then identified the laboratory report from the State Police Crime Lab, which indicated the results of a blood analysis requested by the Grand Rapids Police Department. The defense stipulated that the result was from the blood taken from Petitioner. (Tr. II, 61-62.) The results showed that Petitioner had .19 percent blood alcohol content, nearly double the legal limit in Michigan, which, at the time, was .10 percent. (Tr. II, 63.) Reilly testified that his call for assistance went through dispatch at 1:22 a.m. (Tr. II, 64.) The prosecution rested its case. (Tr. II, 65.)

The defense moved for a directed verdict, contending that insufficient evidence had been presented to show that Petitioner was the driver of the vehicle. (Tr. II, 66.) The court denied the motion. (Tr. II, 68.)

Petitioner testified on his own behalf. Petitioner lived with his mother and his three children. He testified that he had spent most of September 22, 2003 studying for an organic chemistry test. (Tr. II, 73.) At about 6:00 p.m., he received a call from an acquaintance, Eddie Rodriguez, who wanted Petitioner to help him fix a car. (Tr. II, 74, 93.) Petitioner had substantial mechanical experience and frequently worked on cars for people. He agreed to help Rodriguez. However, Petitioner told Rodriguez that he could not drive because he had been drinking. (Tr. II, 74.) Rodriguez told Petitioner that he would call him back in half an hour. Rodriguez did call back and advised Petitioner he would be there in another half hour. (Tr. II, 74.) At about 9:30 p.m., someone dropped Rodriguez off at Petitioner's house but did not leave the car with Rodriguez.

Petitioner asked how they would get to the place to fix the car, and Rodriguez suggested using Petitioner's mother's car. (Tr. II, 74.) Petitioner agreed, but said he would not drive because he had been drinking. In addition, Petitioner acknowledged that he did not have a valid driver's license at the time and that he knew he could not drive. (Tr. II, 75) Rodriguez drove Petitioner's mother's car to the home of a mutual acquaintance, Pablo. Petitioner put some brakes on a Ford LTD and then set the timing. (Tr. II, 75.) While he was working, the people at Pablo's house were partying and drinking beer. Petitioner drank some beer. (Tr. II, 76.) At about 12:30 a.m., Petitioner told Rodriguez that he had to go because he had a test the next day. (Tr. II, 76.) When they left Pablo's, Rodriguez was driving Petitioner's mother's car. (Tr. II, 77.) Rodriguez drove to Burton Street, where he missed the corner and turned the car on its side. Petitioner "freaked out" because the car belonged to his mother. Petitioner told Rodriguez to roll down the windows, and he crawled out. The car was on a steep embankment, and Petitioner slid down the hill. Rodriguez climbed out after Petitioner, and Petitioner did not see where Rodriguez went. Petitioner went down into the freeway. (Tr. II, 77.) Petitioner had lost his glasses in the accident when he hit his head on the dash above the glove box. (Tr. II, 78.) He could not see very well, was injured, and was intoxicated. (Tr. II, 78.) He tried to flag down a car, but no cars were coming at that time of night. (Tr. II, 78.) Petitioner crossed the northbound lane and spent five or ten minutes trying to get across the median. He was trying to get help, and he became worried because he did not see Rodriguez. (Tr. II, 79.) The first time he remembered hearing the police is when he was in the train yard. He went a little farther before stopping so that he would not be in the middle of the tracks. The police officer ordered Petitioner onto the ground. (Tr. II, 79.) He got on his knees, and the officer arrested him. He told the officer that he had not been driving and to look for Eddie Rodriguez. (Tr. II, 80.)

According to Petitioner, he told the officer, "I should have hid in the bushes," not, "I should have hid in the bushes longer." (Tr. II, 80.) Petitioner testified that he did not have any keys with him. He vigorously denied driving at any point in the evening. (Tr. II, 81.) On cross-examination, Petitioner acknowledged that he recognized the keys as the keys that are kept in his mother's garage. He did not know how they came to be in the possession of the police, and he did not think that any of the keys was for his mother's car. One of the keys was for Petitioner's toolbox. (Tr. II, 83-85.) He acknowledged that one of the keys looked like a Ford key, but he denied that it went to his mother's car. (Tr. II, 85.) Petitioner testified that he did not know where the keys to his mother's car were, though he suspected that, if he could be found, Eddie Rodriguez would know. (Tr. II, 103.) The defense rested. (Tr. II, 104.)

At the conclusion of trial, on November 20, 2003, the jury found Petitioner guilty of OUIL, third offense. (Tr. II, 143.) On August 3, 1994, Petitioner was sentenced to serve a term of three years and ten months to fifteen years as an habitual offender. (Sentencing Transcript, (S. Tr.), 8, docket #18.)

## B.    Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals. His brief, which was filed by counsel on September 1, 2004, raised the last three of the seven issues raised in this application for habeas corpus relief. (See Def.-Appellant's Br. on Appeal, docket #219.) Petitioner also filed a *pro per* supplemental brief on appeal, in which he raised the first four grounds set forth in his habeas petition. By unpublished opinion issued on May 17, 2005, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's conviction and sentence. (See 5/17/05 Mich. Ct. App. Opinion (MCOA Op.), docket #19.)

Petitioner, through counsel, sought leave to appeal to the Michigan Supreme Court the three issues raised by counsel in the court of appeals. Petitioner filed a *pro per* application for leave to appeal the four supplemental grounds raised before and rejected by the Michigan Court of Appeals. By order entered March 8, 2006, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (See Mich. Ord., docket #20.) Justice Kelly would have granted leave to appeal. (*Id.*)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the

decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).  Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### Discussion

I.    Unlawful Seizure

In his first ground for habeas relief, Petitioner argues that his stop and subsequent arrest were unconstitutional under the Fourth Amendment because they were not supported by probable cause.  He also alleges that, because the offense, a misdemeanor, did not occur in the presence of the arresting officers, his arrest was unlawful under MICH. COMP. LAWS § 764.15a. Petitioner contends that, because his arrest was illegal, any statements he made at the time of the arrest should have been suppressed.

To the extent Petitioner raises a claim under Michigan law, his claim is not cognizable on habeas review.  The court may entertain an application for habeas relief on behalf of a person in custody pursuant to the judgment of a State court in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Moreover, Petitioner's Fourth Amendment claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996)

(noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Conse-

quently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down. Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard. *Gilbert*, 763 F.2d at 824. Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

Petitioner argues, however, that the Court should review his Fourth Amendment claim because his attorney rendered ineffective assistance in failing to move to suppress the statements he made at the time of arrest. In *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986), the Supreme Court held that restrictions on federal habeas review of Fourth Amendment claims announced in *Stone* do not extend to Sixth Amendment claims of ineffective assistance of counsel,

and "that federal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying attorney error." *Id.*[2]

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error

_____

[2]Because Petitioner failed to object below, and because the Michigan Court of Appeals held that his Fourth Amendment claim was not preserved, Petitioner's Fourth Amendment claim arguably is procedurally defaulted. Petitioner contends, however, that the ineffective assistance of trial counsel excuses his procedural default, and he raised the question of ineffective assistance in the state appellate courts. The Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

- 14 -

had no effect on the judgment.  *Id.* at 691.  A claim of ineffective assistance of counsel presents a mixed question of law and fact.  Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1).  *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

With respect to the performance prong, Petitioner alleges that his attorney should have objected to the admission of his statement on the grounds that his stop and subsequent arrest were improper.  The Michigan Court of Appeals addressed Petitioner's Fourth Amendment argument as follows:

> Defendant first asserts that his stop and subsequent arrest were improper, as his flight from the police was insufficient to form a particularized suspicion for an investigative stop.  As defendant failed to raise this issue below, our review is limited to plain error affecting defendant's substantial rights.[32]  An individual has the right to be secure against unreasonable searches and seizures.[33]  However, an officer may briefly stop an individual for investigatory purposes if he or she has "a particularized suspicion, based upon an objective observation, that the person stopped has been, is, or is about to be engaged in criminal wrongdoing.  The 'particularized suspicion' must be based upon an assessment of the totality of the circumstances presented to the police officer."[34]  Standing alone, flight from an approaching officer is insufficient to support a particularized suspicion; however, it is a factor to be considered in the totality of the circumstances.[35]  Defendant was found running across an expressway near an accident scene in the middle of the night and refused to stop at an officer's request.  This was sufficient to create a particularized suspicion that defendant had committed "wrongdoing" in causing the accident.
>
> [32] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).
>
> [33] US Const, Am IV; Const 1963, art 1, § 11.
>
> [34] *People v. Shields*, 200 Mich App 554, 557; 504 NW2d 711 (1993), citing *United States v Cortez*, 449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981).
>
> [35] *Id.* at 558.

(MCOA Op. at 6-7.)  The Michigan Court of Appeals also concluded that counsel was not ineffective for failing to move to suppress the statements made by Petitioner to Officer Calati:

> Defendant also challenges trial counsel's failure to move for the suppression of his statement to Officer Calati . . . .  Defendant's first challenge is without merit,

however, as we have already determined that defendant's statement to Officer Calati was properly admissible.

(MCOA Op. at 8.)

The court of appeals' analysis unquestionably constituted a reasonable application of established Supreme Court precedent to the circumstances of the stop. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held "that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).

Here, the officers had ample, articulable facts that would have raised a reasonable suspicion. Officers knew the accident had happened recently by the condition of the scene and the warmth of the car. Officer Taylor testified that, when he arrived at the scene, Sergeant Reilly and Officer Calati were both already there. (Tr. II, 40.) As a result, multiple police cruisers were at or near the site of the crash. As he was getting ready to get on the highway to stop traffic, Taylor saw a man run across the northbound lane of US 131, heading east and away from the vehicle. (Tr. II, 41.) Taylor drove down the entrance ramp, activated his lights, and attempted to stop the individual. (Tr. II, 42.) He yelled, "Stop, police," repeatedly. (Tr. II, 43.) The individual jumped the fence separating the US 131 right-of-way from the railroad tracks and continued to run east and north. (Tr. II, 43.) The man turned around and saw Taylor and the police cruisers, then he continued to run through the train tracks and train yard. Taylor chased him on foot, and the man continued for another 100 yards before stopping. (Tr. II, 44.)

It is highly unusual for a person to run across lanes of an expressway at any hour, much less at 1:30 in the morning. That fact in itself is suspicious. In addition, no other people were

about and the man appeared to be running from the scene of a recent accident.  Indeed, Taylor testified that Petitioner had turned and looked at him and at the police vehicles after he heard Taylor shout and identify himself as a police officer.  Nevertheless, the Petitioner turned and ran again.[3] All of these facts amply support a reasonable suspicion warranting a temporary involuntary detention.[4]

Because the police officers had reasonable suspicion to stop Petitioner, his statements to the police made shortly after the stop were not obtained in violation of his rights under the Fourth Amendment.  Consequently, counsel's failure to object to the admission of the statements was entirely reasonable.  *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004) (an attorney's failure to make a frivolous or meritless motion does not constitute the ineffective assistance of counsel); *see also A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978).

---

[3]Regardless of Petitioner's contention that he was not running from the police, testimony clearly supported the court's finding.  The finding therefore constituted a reasonable determination of the facts and is entitled to a presumption of correctness.  28 U.S.C. § 2254(e).

[4]Moreover, after the stop, the officers promptly acquired additional information that ripened their reasonable suspicion into probable cause for arrest.  "'[P]robable cause is a fluid concept  – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'"  *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).  Probable cause requires a reasonable ground for belief that the person to be searched or seized is guilt of a crime.  *Id.* at 371.  In determining whether probable cause exists to arrest, the courts must examine the totality of facts leading up to the arrest and view those facts from the standpoint of an objectively reasonable officer.  *Id.*  Here, once Officer Taylor reached Petitioner, he immediately became aware that Petitioner smelled strongly of drink and could not walk without stumbling.  In addition, Petitioner gave his name to the officers, which was the same as that of the owner of the vehicle.  Further, Petitioner was belligerent and uncooperative.  Taken together, by the time Petitioner volunteered his statement, the officers knew that he had been in the vehicle, that he was inebriated, that he was related to the owner of the vehicle and that his behavior in running from the scene and from clearly identified officers strongly suggested a guilty mind.  Under all of the circumstances, officers had probable cause to arrest Petitioner even before he made his voluntary statement about hiding in the bushes.

II.    Fifth Amendment

Petitioner next argues that, at the time he made his statement to Officer Calati, he was in custody and had not been given *Miranda* warnings.  Petitioner argues that counsel was ineffective in failing to move to suppress the statement under *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Supreme Court has recognized that, in order to protect a suspect's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the subject before interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Miranda*, 384 U.S. at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000).

The Michigan Court of Appeals addressed the question as follows:

> Defendant also asserts that the admission of his statement to Officer Calati about hiding in the bushes violated his Fifth Amendment right against self-incrimination, as he made the statement while in custody without being read *Miranda* rights.[37]  Our review is again limited to plain error.  We first noted that the record is void of evidence indicating whether any officer read defendant his *Miranda* rights, as he was not being interrogated.[38]  Both defendant and Officer Calati testified that defendant made this statement spontaneously.  Accordingly, defendant's right against self-incrimination was not violated by the admission of this statement.

> [37] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

> [38] *People v Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002).

(MCOA Op. at 7.)  The state court's determination unquestionably constituted a reasonable application of established Supreme Court precedent.  Petitioner has at no time attempted to make a record about police officer interrogation.  Petitioner never moved for an evidentiary hearing in the state courts on the question of whether he received *Miranda* warnings or was interrogated.   In fact, by Petitioner's own admission, as well as the testimony of Officer Calati, Petitioner was not being interrogated when the statement was made.  The evidence on the record demonstrates that the only

questions asked were necessary to obtain personal history data, questioning that is exempt under *Miranda*. *United States v. Godinez*, 114 F.3d 583, 589 (6th Cir. 1997). As a result, the state court's finding that the statement was voluntary and did not violate *Miranda* was entirely reasonable.

III. <u>Probable Cause to Support the Search Warrant</u>

Petitioner contends that the search warrant for his blood was not issued on a showing of probable cause and that the underlying affidavit was not supported by facts. As previously discussed, Petitioner's Fourth Amendment claim is barred on habeas review by the doctrine of *Stone v. Powell*, 428 U.S. 465. However, Petitioner again argues that defense counsel was ineffective in failing to object to the admission of the blood alcohol content under *Kimmelman*, 477 U.S. at 383. As a result, in order to determine whether counsel's failure to object was outside the range of professional competent assistance under *Strickland*, the Court must consider the merits of the Fourth Amendment claim.

The Michigan Court of Appeals addressed the issue as follows:

> Defendant contends, for the first time on appeal, that the search warrant for his blood draw lacked probable cause as there was no evidence that he was the operator of the vehicle. The affidavit presented in connection with this warrant is not a part of the record. However, we previously found that the prosecution presented sufficient evidence to support defendant's conviction for OUIL. The record also indicates that Officer Snyder's report includes Mr. Strong's statement that only one man ran from the Ford LTD after the collision. Based on this evidence, we find that the affidavit likely contained sufficient information to for probable cause.

(MCOA Op. at 7.)

The state court's determination constituted a wholly reasonable application of established Supreme Court precedent. As I previously concluded, probable cause existed to support Petitioner's arrest. That probable cause equally would support the request for a search warrant.

Moreover, as the court of appeals noted, the police reports also contained the statement of a witness who did not testify at trial who informed the police that only one man had run from the vehicle after the collision. The state court's factual findings are entitled to a presumption of correctness, which Petitioner has failed to rebut. 28 U.S.C. § 2254(e)(1). As the court of appeals recognized, Petitioner wholly failed in the state courts as well as this Court to demonstrate what facts were alleged in the affidavit. Where a petitioner has failed to develop the factual record in the state courts, this Court is proscribed from holding such a hearing or considering new evidence unless the claim rests on one of the grounds identified in 28 U.S.C. § 2254(e)(2). *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000). None of the circumstances identified in § 2254(e)(2) is present in this case. As a result, Petitioner cannot prove that the precise contents of the affidavit in support of the search warrant were different from those found by the Michigan Court of Appeals. On the information contained in the record, the state court properly rejected Petitioner's claim.

Because the warrant was supported by probable cause, a motion to suppress would have been futile. Trial counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance. *Chegwidden*, 92 F. App'x at 311. Petitioner therefore is not entitled to relief under *Kimmelman*, 477 U.S. at 383.

IV.     Sufficiency of the Evidence

Petitioner asserts that the prosecution presented insufficient evidence to establish beyond a reasonable doubt that Petitioner was driving the vehicle and therefore guilty of operating a vehicle under the influence of liquor. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The Michigan Court of Appeals thoroughly addressed the question:

> Defendant contends that the prosecution failed to present sufficient evidence to support his conviction for OUIL as there was no evidence that he was the driver of the vehicle. In sufficiency of the evidence claims, we review the evidence in the light most favorable to he prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.[6] "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime."[7]

> MCL 257.625 provides in relevant part:

>> (1) A person . . . shall not operate a vehicle upon a highway . . . of either of the following applies:

>>> (a) The person is under the influence of intoxicating liquor . . .

>>> (b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood per 210 liters of breath, or per 67 milliliters of urine.[8]

> Defendant concedes that he was under the influence of intoxicating liquor and that his blood alcohol content was almost twice the legal limit. However, defendant contends that the circumstantial evidence presented by the prosecution was insufficient to establish that he was the operator of the vehicle, rather than a passenger.[9]

The prosecution presented no *direct* evidence that defendant was the driver of the vehicle. The prosecution did show that the Ford LTD involved in the collision belonged to defendant's mother and defendant had a set of Ford keys in his pocket. Defendant was found near the accident scene and ran from the police. When apprehended, defendant told police either that he "should have hid in the bushes longer" or that he "should have hid in the bushes."[10] Although defendant claims that Mr. Rodriguez was driving the vehicle, no one else was found nearby; an officer testified that defendant gave a different name on the scene; and defendant admitted that he failed to give police any information to help them locate Mr. Rodriguez.[11] Viewing this evidence in the light most favorable to the prosecution, a jury could find beyond a reasonable doubt that defendant was driving the vehicle at the time of the collision. Accordingly, defendant is not entitled to relief on this ground.

[6] *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002).

[7] *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

[8] MCL 257.625(1).

[9] The Michigan Supreme Court has provided the following guidance to determine if a defendant was "operating a vehicle under the statute:

"[O]perating should be defined in terms of the danger the OUIL statute seeks to prevent: the collision of a vehicle being operated by a person under the influence of intoxicating liquor with other persons or property. Once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk. [*People v Wood*, 450 Mich 399, 404-405; 538 NW2d 351 (1995)].

[10] Although evidence of flight, including running and hiding from the police, is insufficient standing alone to support a conviction, it is admissible to show consciousness of guilt. See *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003); *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995).

[11] Similarly, a prosecutor may properly comment on a defendant's failure to report a crime when "reporting the crime would have been natural if the defendant's version of the events were true." *Goodin*, *supra* at 432. If defendant's version of the events were true in this case, he would have been inclined to tell police how to find Mr. Rodriguez.

(MCOA Op. at 2-3.)

The court of appeals applied the correct constitutional standard and its findings are fully supported by the record. Although the facts presented were entirely circumstantial, circumstantial evidence alone may support a conviction. *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003);

*McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Moreover, circumstantial evidence need not remove every reasonable hypothesis except that of guilt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995). Here, the facts that Petitioner ran from the scene, was the son of the owner, had Ford keys in his pocket and made a statement about hiding in the bushes present a strong circumstantial case of guilt. The facts are sufficient for a rational trier of fact to conclude that Petitioner was the driver of the vehicle. As a result, the state court's finding was a reasonable application of established Supreme Court precedent.

V.     Failure to Produce Endorsed Witness

Petitioner next argues that he was denied a fair trial by the prosecution's failure to produce an endorsed witness at trial. In support of his claim, Petitioner relies upon MICH. COMP. LAWS § 767.40a, which establishes a continuing obligation to disclose *res gestae* witnesses to the defense and to provide, at least 30 days before trial, the list of witnesses the prosecutor intents to produce at trial. Petitioner also argues that, because the prosecutor had endorsed Everett Strong, a witness to the accident, but failed to produce him at trial, Petitioner was entitled to a missing-witness instruction.

Petitioner's claim arises solely under state law and is not cognizable on habeas review. As I previously discussed, the Court may entertain an application for habeas relief solely on claims of constitutional error. 28 U.S.C. § 2254(a); *Blackledge*, 431 U.S. at 75. The federal courts have no power to intervene on the basis of a perceived error of state law. *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41.

Moreover, with respect to the missing-witness instruction, a claim that a trial court gave an improper jury instruction typically is not cognizable on habeas review. Instead, Petitioner

must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (same). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

Petitioner fails to demonstrate the sort of fundamental unfairness that would implicate due process. The record indicates that Everett Strong was expected to testify that only one witness ran from the vehicle, thereby undermining Petitioner's theory of the case – that Mr. Rodriguez was also in the vehicle and was driving. As a result, the absence of Strong at trial actually strengthened Petitioner's defense. Petitioner therefore cannot demonstrate the sort of unfairness that would implicate due process.

VI.     Prosecutorial Misconduct

Petitioner argues that the prosecutor committed misconduct that deprived Petitioner of a fair trial when he argued in rebuttal that a witness told a testifying officer that he only saw one person exit the vehicle after the crash.

The scope of review in a habeas corpus action of prosecutorial misconduct is narrow. A petitioner must do more than show erroneous conduct. "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated

or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Consequently, the giving of cautionary instructions is relevant to determining whether fundamental fairness was denied. *Id.* at 1356.

The Michigan Court of Appeals analyzed the issue as follows:

Defendant contends that the prosecutor improperly argued facts not in evidence. Prosecutorial misconduct claims are reviewed on a case by case basis, examining any remarks in context, to determine if the defendant received a fair and impartial trial.[26] A prosecutor enjoys wide latitude in fashioning arguments and may argue the evidence and all reasonable inferences arising from it.[27]

In rebuttal, the prosecutor argued that Officer Andrew Snyder testified that a witness who heard the accident, Mr. Strong, told him that only one man ran from the accident scene. However, Officer Snyder *never* testified that a witness talked to him after the accident. In fact, as discussed above, the prosecutor presented no evidence regarding Mr. Strong, the only eyewitness to this accident. Over defendant's objection, the trial court instructed the jury: "We will let the jury use their collective memory and they've had the opportunity to take notes. . . . Again, in all things, it is what you recall the testimony to be, not what the attorneys say the evidence is." Following these instructions, the prosecutor continuted to make the same argument.

The prosecutor clearly argued facts not in evidence. Furthermore, the prosecutor's misconduct was not inadvertent. Defendant objected to Mr. Strong's absence more than once and the prosecutor explained his attempts to locate the witness. Under the circumstances, it is highly unlikely that the prosecutor was unaware of whether or not he had elicited this testimony from Officer Snyder.[28] This Court will not countenance prosecutorial misconduct, especially when it amounts to a knowing and deliberate violation of the prosecution's duty to seek justice.[29] However, in light of the overwhelming evidence of defendant's guilt, it is unlikely that this error was outcome determinative.[30] Furthermore, the trial court's immediate corrective instruction to the jury cured the prejudice caused by the prosecutor's

improper argument.[31]  Therefore, defendant is not entitled to the vacation of his conviction, despite the prosecutor's misconduct.

[26] *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).

[27] *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000), overruled in part on other grounds *Crawford v Washington*, 541 US 36, 124 S Ct 1354; 158 L Ed 177 (2004).

[28] See *People v Ray*, 119 Mich App 724, 728; 326 NW2d 622 (1982) (the prosecutor's continued improper questioning regarding the defendant's postarrest silence was not inadvertent as the defendant's first response "made the prosecutor aware that defendant had exercised his right to remain silent").

[29] See *People v Strong*, 404 Mich 357, 360-363; 273 NW2d 70 (1978) (finding that the prosecutor violated professional standards by deliberately inserting incompetent prejudicial evidence into the defendant's trial despite clear warnings from the trial court).

[30] *People v. Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

[31] Cf *People v. Leshaj*, 249 Mich App 417, 420-421; 641 NW2d 872 (2002) (finding that reversal was required where the trial court failed to take "swift action" to prevent prejudice).

(MCOA Op. at 5-6.)

The Michigan Court of Appeals found that the prosecutor's remarks were improper but concluded that they did not warrant overturning his conviction.  The court found that some of the relevant considerations weighed in Petitioner's failure.  Specifically, the court found that the prosecutor improperly argued facts that had not been placed in evidence and that he had done so intentionally.  *See Young*, 470 U.S. at 11-12.  However, the remarks were relatively isolated, and, as the court noted, they drew an immediate objection by counsel.  *See id.*  The trial court promptly instructed the jury that the remarks of the prosecutor were not evidence and that they must base their decision on their own recollections of the evidence at trial, not on the prosecutor's description of that evidence.  Finally, the court of appeals concluded that the evidence was sufficiently overwhelming to outweigh any harm to Petitioner caused by the prosecutor's improper remarks.

The court of appeals' factual findings on each of the considerations are entitled to a presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546 (holding that the

presumption of correctness applies to the findings of appellate courts as well as those of trial courts). Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*; *see also Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner fails entirely to rebut the presumption, merely arguing that the court of appeals should have reached a different conclusion based on those facts. Notwithstanding Petitioner's arguments, the court of appeals' determination that the prosecutor's remarks did not deprive Petitioner of a fair trial is a reasonable conclusion from the record evidence. *See* 28 U.S.C. § 2254(d).

VII.     Ineffective Assistance of Trial Counsel

Petitioner contends that counsel was ineffective in failing to move to suppress Petitioner's statement to police and the results of his blood alcohol analysis. The Court previously has fully addressed Petitioner's ineffective-assistance-of-counsel claims, insofar as they involve Petitioner's claims under the Fourth and Fifth Amendments. Petitioner also contends that counsel was ineffective in failing to investigate the circumstances of the case, failing to object to the prosecutor's use of Petitioner's pre-arrest silence, and failing to present a defense.

As previously discussed, in order to establish a claim of ineffective assistance of counsel, a petitioner must prove both that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687-88. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Petitioner's claims that defense counsel failed to investigate his case and improperly advised Petitioner to waive his preliminary examination are wholly unsupported in the record, and the Michigan Court of Appeals summarily rejected the claims:

> Defendant asserts that trial counsel failed to promptly investigate his case. Defendant also contends that trial counsel improperly recommended that he waive his right to a preliminary examination before the third examination. As there is no record of counsel's actions before trial, defendant cannot overcome the presumption that trial counsel was effective.

(MCOA Op. at 8.) As previously discussed, Petitioner at no time sought an evidentiary hearing on the effectiveness of trial counsel. As a result, the state courts and this Court are limited to the facts on the record from trial. Inasmuch as that record fails to include information concerning counsel's pretrial investigation and reasons for recommending waiver of the preliminary examination, Petitioner is unable to overcome the presumption that counsel's performance was professionally reasonable. *Strickland*, 466 U.S. at 689. The state court's rejection of these arguments was patently reasonable.

Petitioner also argues that his attorney was ineffective in failing to object to the prosecution's questions regarding Petitioner's prearrest silence and failure to give police further information about the alleged driver of the vehicle. The Michigan Court of Appeals rejected the claim:

> Defendant fails to indicate how the prosecution used his prearrest silence against him at trial. We are not required to "discover and rationalize the basis" of an appellant's claim when that party merely announces its position without any supporting authority or facts.[46] However, it appears that defendant is challenging trial counsel's failure to object to the prosecution's questions regarding defendant's failure to give police further information regarding Mr. Rodriguez. The defense theory of the case was that Mr. Rodriguez, not defendant, was the driver of the vehicle at the time of the accident. Defendant made the issue relevant by presenting this version of events on direct examination.[47] Therefore, the prosecutor's questions

were proper[48] and trial counsel was not required to object. Accordingly, defendant has failed to overcome the presumption that trial counsel was effective.

[46] *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).

[47] See [*People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003)]

[48] MRE 611(b); *People v Jackson*, 108 Mich App 346, 349; 310 NW2d 238 (1981).

(MCOA Op. at 8-9.)

The court of appeals analyzed Petitioner's underlying constitutional claim solely as one of state law, rather than as a claim arising under the Due Process Clause, notwithstanding the content of Petitioner's argument on appeal. Petitioner's state-law claim is not cognizable in this habeas action. *See* 28 U.S.C. 2254(a).

In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the Supreme Court held "that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." The theory underlying *Doyle* is that while *Miranda* warnings contain no express assurance that silence will carry no penalty, "such assurance is implicit to any person who receives the warnings." *Id.* at 618. On this reasoning, the Court concluded that it would be fundamentally unfair first to induce a defendant to remain silent through *Miranda* warnings and then to penalize the defendant who relies on those warnings by allowing the defendant's silence to be used to impeach an exculpatory explanation offered at trial. *Id.* However, *Doyle* applies only in the context of post-*Miranda* silence. In cases following *Doyle*, the Supreme Court held that the Fifth and Fourteenth Amendments permit a defendant to be impeached with his prearrest pre-*Miranda* silence, *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980), or postarrest pre-*Miranda* silence, *Fletcher v. Weir*, 455 U.S. 603, 607 (1982), if he later takes the stand during his criminal trial.

In this case, Petitioner objects specifically to the use of his prearrest silence. Moreover, Petitioner expressly argues that he was *not* given *Miranda* warnings at the time of his arrest. Therefore, the prosecutor was free to impeach Petitioner with his silence at the time of his stop and subsequent arrest. The prosecutor's argument was substantially directed to Petitioner's failure at the time of his stop and arrest to assist the police to identify and find the man he claims was driving the vehicle:

> MR. DOYLE [PROSECUTOR]: . . . You have to base your opinion or base your verdict on what has been testified here today. But it does beg the question of whether – of when somebody is falsely accused of a criminal activity, it begs the question of why you would not help or aid the police in finding him. I mean think about it. He's being arrested for – arrested for a crime he didn't commit. He's being belligerent with the officers. Maybe that's the alcohol. Who knows. He is being very uncooperative. He doesn't tell them where this guy, Eddie, lives. He doesn't give him his cell phone. So – and Mr. Avery also brings up the fingerprint aspect, which goes to the same thing, because fingerprints, as you may or may not know, you have to have something to compare them to, i.e., a person, Eddie Rodriguez, if such a person even exists, and wouldn't you think that if some person did exist and you were charged with a crime he committed, that you would do everything in your power to help the police find them, find that person, track him down, "I didn't do this, he did it. Here's every piece of information I have about him."? It wasn't done at the scene. It wasn't done since then.

(Tr. II, 127.) Only the last sentence of the argument refers to a time after which Petitioner may have been given his *Miranda* warnings. In light of the proper commentary about Petitioner's silence before he had been given warnings, the impact of last sentence, if any, could only have been minor. Defense counsel reasonably could have considered that an objection would only have highlighted the perfectly proper remainder of the argument. Petitioner therefore fails to overcome the presumption that defense counsel's failure to object was sound trial strategy. *Strickland*, 466 U.S. at 689. For the same reasons, the final improper statement could not have been prejudicial because

it could not have had an effect on the judgment, given the prosecutor's other proper comments about Petitioner's failure to identify the alleged driver. *Id.*

Petitioner's final claim of ineffective assistance of counsel is that his attorney failed to present a defense. In his brief, Petitioner suggests that all of counsel's previously discussed failures, taken together, rise to the level of ineffective assistance of counsel. I have rejected each of Petitioner's arguments as meritless. As a result, even when considered cumulatively, the alleged errors fail to demonstrate the counsel rendered ineffective assistance.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Dated:  January 13, 2010                      /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).